UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff / Respondent, | |
| v. | No. 3:21-cr-00264-1 |
| BRIAN KELSEY, | |
| Defendant / Movant. | |

**BRIAN KELSEY'S MOTION FOR DISCOVERY PURSUANT TO RULE 6(A)
OF THE RULES GOVERNING SECTION 2255 PROCEEDINGS
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

**MOTION FOR DISCOVERY**

Defendant/Movant Brian Kelsey respectfully moves this Court for an order authorizing limited discovery in connection with his motion to vacate his sentence pursuant to 28 U.S.C. § 2255. Mr. Kelsey submits that good cause exists for the requested discovery because self-described "star witness" Jeremy Durham now recants his grand jury testimony and says that the government committed prosecutorial misconduct by drafting statements for him to read to the grand jury that were "not true." To fully develop this argument, Mr. Kelsey needs access to those statements. Grounds for the motion are set out in more detail in the incorporated Memorandum of Law.

**MEMORANDUM OF LAW**

Rule 6 of the Rules Governing Section 2255 Proceedings provides that a district court may allow discovery in a Section 2255 proceeding "where specific allegations before the court show reason to believe that the [movant] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief." *Thomas v. United States*, 849 F.3d

669, 680 (6th Cir. 2017) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). The Court may authorize discovery "for good cause." Rule 6(a), Rules Gov'g § 2255 Proceedings.

I. **The Court should authorize discovery of the government's grand jury statements that Durham rejected.**

Here, good cause exists because the specific allegations of prosecutorial misconduct before the court regarding the grand jury were made by the "star witness" whose grand jury testimony was the primary reason Mr. Kelsey entered his guilty plea. Therefore, if the facts behind Durham's Grand Jury testimony are fully developed, Mr. Kelsey will be able to demonstrate that he is confined illegally. The government's entire case against Mr. Kelsey is essentially a "he said/he said" dispute about what Mr. Kelsey said in phone calls with Jeremy Durham. And now Durham says his characterizations of those phone calls to the Grand Jury was a mixture of his truthful testimony and untruthful testimony that the government crafted for him. *See* Durham Recording 1 at 45:23; 37:49.

Even if a witness's testimony gradually changed over the course of three interviews, as did Durham's, and it progressed toward placing more and more criminal blame on another individual, the government would still be obligated, based on Department of Justice policy, to present or otherwise disclose such evidence to the grand jury before seeking an indictment against such an individual. Justice Manual, 9-11.233.

Here, the government knew – before Durham testified before the grand jury – that Durham's prior statements were favorable to Mr. Kelsey and that Durham had forcefully rejected the statements the government prepared for him to read to the grand jury: "Brian, that first statement they wanted me to read, Good God!" (Durham Recording 1 at 45:17.) "Day 2 the statement that they wanted me to read, I'm like, 'That's not true.' I got upset." *Id*. at 22:58. "The

third day was when I read the statement to the grand jury. The second day there was this big fight where I stood up a couple of times and kind of walked—I mean, it was crazy." *Id*. at 18:05.

Because Durham's grand jury statement was a mixture of his testimony and the government's, a comparison of the statements he rejected to the statement he ultimately gave to the grand jury would further help tease out which parts were added by the government and which were given by him. It would further develop the facts behind a substantial argument that Mr. Kelsey is innocent and is confined illegally because the government unduly influenced Durham's grand jury testimony, unbeknownst to Mr. Kelsey.

II. **The Court should authorize discovery of everyone who witnessed the Durham interviews, all notes or recordings they took, and then allow Mr. Kelsey to depose them.**

The FBI FD-302 interview report forms show Durham's testimony gradually evolving over the course of three interviews to place more and more criminal blame on Mr. Kelsey, but they do not reveal why his testimony changed. When Mr. Kelsey asked Durham about it, he explained why: "They kept threatening me with the immunity letter." (Durham Recording 1 at 33:08.) "Brian—after the three days that I had, I truly—I mean, they kept getting pissed at me because they were like, 'Why are you trying to protect him? He doesn't f*cking like you.'" *Id*. at 43:18. "I was saying stuff, and they were like, 'You're lying! You're about to lose your immunity.'" *Id*. at 1:05:22. "I mean, they were threatening me like hard core." *Id*. at 48:26.

This undue influence by the government goes to the heart of Mr. Kelsey's conviction. To fully develop the facts behind his argument, Mr. Kelsey needs to know everyone who witnessed Durham's interviews and be able to depose them. He needs to know what others in the room saw and heard.

Furthermore, Durham believes there was a video recording made of the interviews: "I think they were recording the whole thing. They just need to get the tape." (Durham Recording 2 at 9:37.)

3

If that is true, Mr. Kelsey should be given the recordings. And he should be given the raw notes or preparation materials of everyone who was in the room or on videoconference.

**III.    The Court should authorize discovery of what other prosecutions were foregone against Durham in return for his testimony against Mr. Kelsey.**

In 2017, the Tennessee Registry of Election Finance released an audit of Durham's campaign finances, which found a combined total of approximately 300 unique statutory violations of the State's campaign finance and disclosure laws, including diverting campaign funds for personal use. *Durham v. Tennessee Registry of Election Fin.*, 666 S.W.3d 459, 463 (Tenn. Ct. App. 2022). This constitutes a crime that is often prosecuted by the federal government, *see, e.g., United States v. Hartsell*. *See, e.g.,* "State Senator Indicted for Misuse of Campaign Funds," Dep't of Justice Press Rel., (Sept. 27, 2016).[1] Yet Durham was not prosecuted for it. Mr. Kelsey knows the government was investigating Durham because he was sent and responded to a subpoena on a separate investigation into Durham. On Recording 1, Durham references his thoughts of receiving immunity from such a separate campaign finance prosecution in return for his testimony against Kelsey: "I didn't know what in the world [Mr. Kelsey] would know on mine." (Durham Recording at 1:12:25.). To fully analyze the threats the government made against Durham in return for changing his testimony against Mr. Kelsey, Mr. Kelsey needs discovery on what that very public federal investigation against Durham, that was ultimately dropped, entailed.

**IV.    The Court should authorize discovery of Durham's other exculpatory statements.**

In addition to the two Durham Recordings, there is more evidence from Durham that exculpates Mr. Kelsey. Durham reveals its existence on Recording 1: "I mean, I've left drunken, sobbing voicemails to some friends about your situation while this was going on." (Durham Recording 1 at 40:10.) Mr. Kelsey should be permitted discovery of these voicemails to

---

[1] Available at https://www.justice.gov/usao-mdnc/pr/state-senator-indicted-misuse-campaign-funds.

corroborate the statements of prosecutorial misconduct Durham makes on the Recordings. Some of these voicemails could be contemporaneous to Durham giving the Grand Jury testimony and may shed further light on which portions of it were truthful and which came from the government. These voicemails are material to the government's misconduct.

On Recording 1, Durham also claims that he's made social media posts under pseudonymous names, defending Kelsey. Speaking of a Facebook account, he says, "That was a burner account. I've got a burner account where I talk sh*t to people that are kicking sand in your face." (Durham Recording 1 at 46:39). Mr. Kelsey also should be permitted discovery of these social media posts to corroborate the statements of prosecutorial misconduct Durham makes on the Recordings. These posts also may shed light on which portions of Durham's grand jury testimony were truthful and which came from the government. These social media posts are material to the government's misconduct.

V. **The Court should authorize discovery of Durham's use of drugs and alcohol, legal and illegal.**

On Durham Recording 1, Durham mentions his "drinking problem. I was out of control. . . . I was going off the f*cking rails." (*Id*. 40:32). Durham's substance abuse in 2016 surely affected his actions and likely clouded his memory of events in 2021.

Plus, he was taking Adderall, a sign of a patient with impulsive behaviors. In 2013, law enforcement in Williamson County accused Durham of altering a prescription to receive a controlled substance, and Durham told the *Tennessean* the prescription was for Adderall. *See* Dave Boucher, Jill Cowan, and Stacey Barchenger, "GOP leaders: Rep. Durham investigation raises concerns," *The Tennessean.com* (Dec. 10, 2015).[2]

---

[2] Available at https://www.tennessean.com/story/news/politics/2015/12/10/gop-leaders-rep-durham-investigation-raises-concerns/77090518/.

The Court should permit Mr. Kelsey to discover to what extent Durham was "off the rails" during the events at the heart of Mr. Kelsey's conviction.

Furthermore, the Court should grant discovery into what the government knew about Durham's substance abuse. Just before Mr. Kelsey entered his guilty plea, Durham was charged with driving under the influence, possessing drug paraphernalia, and resisting arrest after crashing into another vehicle while intoxicated. *See* Jonathan Mattise, "Ousted Tennessee Ex-Lawmaker Arrested on DUI Charge in Crash," *APNews.com* (Oct. 24, 2022).[3] Whether the government knew or should have known of Durham's substance abuse is material to whether the government had reason to doubt Durham's grand jury testimony and, thus, committed misconduct in allowing it to be given and/or failing to disclose Durham's substance abuse issues to the grand jury.

**VI.   The Court should authorize discovery regarding how it handled the Smith Recording.**

Bryan Jarosemich signed a Declaration saying he provided the government with the Smith Recording on August 9, 2022, and he provided the Court copies of his emails doing so and "read receipt" messages showing that the government received his emails. *See* Exhibit 3 to the Emergency Motion for Release Memorandum and Exhibit 5 to the Motion to Vacate Memorandum.

The Court should grant discovery into whether the government received these emails and what they did with them, including whether they reviewed the Smith Recording, transcribed it, or otherwise took action in response to receiving it.

**VII.   The Court should authorize the following proposed discovery.**

Document Requests:

1. All drafts of statements prepared for Jeremy Durham.

---

[3] Available at https://apnews.com/article/driving-under-the-influence-arrests-tennessee-nashville-48d4c0a012cff1d84a58511ff05e0cf5.

2. All notes concerning the government's interviews of Jeremy Durham, including all contemporaneous notes or other records of these interviews.

3. All written or recorded materials utilized to prepare for any of the government's interviews of Jeremy Durham.

4. All correspondence from any U.S. Department of Justice current or former employee[4], including but not limited to emails, text messages, voicemails, or other written or recorded messages, internal and external, regarding any of the government's interviews of Jeremy Durham.

5. All correspondence from any U.S. Department of Justice current or former employee, including but not limited to emails, text messages, voicemails, or other written or recorded messages, internal and external, regarding the government's charging decision and decision-making process to indict Brian Kelsey.

6. All investigation file documents and all correspondence from any U.S. Department of Justice current or former employee, including but not limited to emails, text messages, voicemails, or other written or recorded messages, internal and external, regarding the government's charging decision and decision-making process not to indict Jeremy Durham for this or other crimes between 2015 and 2022.

7. All correspondence, including but not limited to emails, text messages, voicemails, or other written or recorded messages, to/from Jeremy Durham regarding Brian Kelsey, his indictment, and conviction in this case.

---

[4] Employees of the Department of Justice ("Main Justice") would encompass individuals employed by Main Justice, any United States Attorney's Office, and the Federal Bureau of Investigation.

8. All social media posts made by Jeremy Durham regarding Brian Kelsey from January 1, 2016 to the present, whether made in his name, anonymously, or in the name of another.

9. All written or recorded materials in the possession of the U.S. Department of Justice or Jeremy Durham regarding Jeremy Durham's intake of alcohol, prescription drugs, and illicit drugs.

10. All correspondence, including but not limited to emails, text messages, voicemails, or other written or recorded messages, regarding the Smith Recording.

11. All transcriptions or notes made regarding the Smith Recording.

<u>Interrogatories</u>:

1. What are the names, titles, phone numbers, email addresses, and physical addresses of all witnesses who observed any portion of any of the government's interviews of Jeremy Durham?

2. What are the names, titles, phone numbers, email addresses, and physical addresses of any other persons who might have knowledge of the facts surrounding the government's interviews of Jeremy Durham, and what is a brief description of that knowledge?

3. What are the names of all persons Jeremy Durham may have left voicemails and sent emails, text messages, or other recorded messages regarding Brian Kelsey's indictment and conviction in this case?

4. What are the names of all social media accounts utilized by Jeremy Durham since January 1, 2016, and what are the hyperlinks where they are located online?

5. Have the accounts listed in response to the prior interrogatory been deleted or have posts regarding Brian Kelsey been deleted, and if so, when and under what circumstances?

6. What are the names of all drugs, legal and illegal, that Jeremy Durham has taken since 2016 and in what amounts?

7. What are the names of all drugs, legal and illegal, that the U.S. Department of Justice has knowledge that Jeremy Durham has taken since 2016 and in what amounts?

8. Did the government receive the Smith Recording and if so, what are the names, titles, phone numbers, email addresses, and physical addresses of all witnesses who received the Smith Recording?

9. Did the government review the Smith Recording?

10. Did the government transcribe the Smith Recording or otherwise take written notes regarding it?

11. Did the government disclose the Smith Recording to Mr. Kelsey?

Depositions:

1. All the individuals listed in response to Interrogatory 1.
2. All the individuals listed in response to Interrogatory 2.
3. All the individuals listed in response to Interrogatory 3.
4. All the individuals listed in response to Interrogatory 8.

**VIII. The proposed discovery is targeted and material.**

Mr. Kelsey asserts that the requested discovery is targeted, specific, and material. It is aimed at uncovering evidence that may substantiate his claims and is not a fishing expedition masquerading as discovery. If the facts are fully developed through discovery, Mr. Kelsey will be able to demonstrate that he is entitled to relief under Section 2255.

9

Case 3:25-cv-00191   Document 3   Filed 02/20/25   Page 9 of 11 PageID #: 468

Proposed discovery "is material when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Velazquez-Rivera v. United States*, 54 F.Supp. 3d 168, 170 (D.P.R. 2014) (cleaned up). Here, Mr. Kelsey demanded to, and did, review Durham's grand jury testimony before pleading guilty. (Kelsey Decl., Ex. 4 to his 2255 Motion to Vacate Memorandum of Law at 4-5, ¶ 9.) Had he known that Durham initially exculpated him but was pressured to reverse himself prior to testifying before the grand jury, Mr. Kelsey never would have pleaded guilty, and the result would have been different.

It is important to allow discovery in Section 2255 proceedings when there is reason to believe that the movant may be able to demonstrate entitlement to relief if the facts are fully developed. *See Banks v. Dretke*, 540 U.S. 668, 675-76, (2004) ("Ultimately, through discovery and an evidentiary hearing authorized in a federal habeas corpus proceeding, the long-suppressed evidence came to light.") Mr. Kelsey respectfully submits that his specific allegations and the nature of his claims warrant the authorization of discovery in this case.

WHEREFORE, Mr. Kelsey requests that the Court permit him to engage in limited discovery to fully develop the facts supporting his motion to vacate pursuant to 28 U.S.C. § 2255.

Respectfully submitted,

*/s/ Joy Boyd Longnecker*
Joy Boyd Longnecker
Barnes & Thornburg, LLP
1600 West End Avenue, Suite 800
Nashville, TN 37203-3494

*/s/ Kent Wicker*
Kent Wicker
WICKER / BRAMMELL PLLC
323 West Main Street, 11th Floor
Louisville, Kentucky 40202
(502) 780-6185
kent@wickerbrammell.com
*(Admitted Pro Hac Vice)*

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing document has been served through the CM/ECF system, which will send notice of electronic filing on this 23rd day of January, 2025.

Kathryn W. Booth
U.S. Attorney's Office
719 Church Street Suite 3300
Nashville, TN 37203
kathryn.booth@usdoj.gov

David Pritchard
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, TN 38103
david.pritchard2@usdoj.gov

John P. Taddei
U.S. Department of Justice Public Integrity Section
1301 New York Ave. NW Ste 10th Floor
Washington, DC 20530
john.taddei@usdoj.gov

*/s/ Joy Boyd Longnecker*
Joy Boyd Longnecker